Aaron M. McKown, California Bar No. 208781
**NAVARRO | MCKOWN**
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
Telephone: (949) 245-1004
Facsimile:  (949) 610-7527
E-Mail:       aaron@nmbesq.com

Attorneys for Plaintiff
WORLD SERIES OF BEACH VOLLEYBALL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLD SERIES OF BEACH VOLLEYBALL, LLC, a California limited liability company,<br><br>                Plaintiff,<br><br>v.<br><br>THE JEL SERT COMPANY, an Illinois Corporation,<br><br>                Defendant. | Case No.<br><br>**COMPLAINT**<br><br>___ |

Plaintiff WORLD SERIES OF BEACH VOLLEYBALL, LLC ("WSOBV") alleges as follows:

## NATURE OF ACTION

1.      This is a simple breach of contract case. WSOBV is the organizer of a premier multi-day annual event known as "The World Series of Beach Volleyball," which has occurred every summer in Southern California since 2013. Defendant The Jel Sert Company ("Jel Sert") is the owner of the OTTER POP brand of frozen flavored ice bars. In December 2016, the parties entered into a three-year sponsorship agreement in which Jel Sert agreed to pay WSOBV an annual sponsorship fee, divided into three equal payments due on specific days of the year,

in order to be associated with and promoted at the annual World Series of Beach Volleyball event.

2.  The parties performed their respective obligations relative to the 2017 event without issue. In fact, after the 2017 event concluded, Jel Sert's Senor Brand Manager praised WSOBV for its handling of the event.

3.  Nonetheless, without notice, Jel Sert failed and/or refused to make the first payment for the 2018 event when it was due on December 1, 2017. Then, on December 20, 2017, Jel Sert's president, Ken Wagner, informed WSOBV in writing that it was terminating the sponsorship agreement because the 2018 event was scheduled to occur in Huntington Beach in the month of August rather than in Long Beach at the end of July. The sponsorship agreement, however, did not allow Jel Sert to terminate the agreement based on either the date or location of the annual event. Jel Sert's failure and refusal to make the December 1, 2017 payment constituted a breach of the parties' agreement. Jel Sert's notice that it was terminating the agreement effective December 20, 2017 constituted an anticipatory breach of its contractual obligations owed thereafter.

4.  By way of this Complaint, WSOBV seeks compensatory damages in the amount of $290,000, consequential damages in an amount of no less than $1,000,000, attorneys' fees as provided by contract, pre and post-judgment interest, and costs.

**PARTIES**

5.  WSOBV is a California limited liability company with its principal place of business in El Segundo, California. All of the members of WSOBV are residents of California.

6.  WSOBV is informed and believes, and thereon alleges, that Jel Sert is an Illinois corporation with its principal place of business in West Chicago, Illinois.

**JURISDICTION**

7.  This Court has subject matter jurisdiction over WSOBV's claims

pursuant to 28 U.S.C. § 1332 (diversity) because WSOBV and Jel Sert are citizens of different states and the amount in controversy exceeds $75,000.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events, omissions, and breaches giving rise to WSOBV's claims, described herein, occurred in the Central District of California and because the parties contractually agreed that venue of any dispute related to their agreement would be exclusively in state or federal court in Los Angeles, California.

## FACTUAL BACKGROUND

9. Beach volleyball has grown from a family recreational sport first played on the beaches of Santa Monica in the early 1920s to a major professional and Olympic sport. The premier international beach volleyball league is operated by the Federation Internationale de Volleyball (FIVB), which was founded in 1947, and which first introduced a world beach volleyball tour for men in 1989 and for women in 1992 now known as the FIVB World Tour.

10. WSOBV was founded in 2013 for the purpose of establishing the world's premier beach volleyball event, which it dubbed the World Series of Beach Volleyball. The event originally consisted of both a FIVB Grand Slam beach volleyball tournament coupled with a music festival headlined by a chart topping artist. Prior to the 2013 event, the FIVB World Tour had not held a sanctioned event in the United States for the previous ten years.

11. Critical to the success of these annual festivals and sporting events are the sponsors and the benefits those sponsors provide to the organizer and event. For example, WSOBV entered into a strategic partnership with ESPN to televise the tournament on its network, which substantially increased the visibility and credibility of the event and was the key incentive for securing top tier financial sponsors. In addition to its various strategic partnerships, WSOBV also selectively secured financial partners each year for the event. The number of financial sponsorships was restricted in order to ensure that each sponsor received sufficient

promotion and recognition commensurate with their financial contribution.

12. Given WSOBV's successful track record at promoting and operating the World Series of Beach Volleyball event over the course of multiple years, Jel Sert decided that it wanted to become a financial sponsor of the event. As a result, in December 2016 the parties entered into a series of negotiations for Jel Sert to become a multi-year event sponsor starting in the summer of 2017. These negotiations culminated with the parties' execution of a written agreement dated December 20, 2016 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

13. At the time Jel Sert entered into the Agreement with WSOBV, Jel Sert knew that: (a) WSOBV was relying on Jel Sert as a key "title" sponsor of the "Spiked" portion of the WSOBV event; (b) that WSOBV was dependent upon Jel Sert's sponsorship commitment for the survival of its business; and (c) that, by entering into the Agreement, WSOBV was forgoing the opportunity to secure another "title" sponsor for "Spiked."

14. The Agreement provided for Jel Sert to pay WSOBV an escalating annual sponsorship fee in three equal payments over the course of each sponsorship year. The total fee for the 2017 event was $130,000; the total fee for the 2018 event was $140,000; the total fee for the 2019 event was $150,000. Payments for each year were divided into three equal amounts and were due on December 1, May 15, and July 15, respectively. In exchange for these payments, WSOBV agreed to promote Jel Sert's OTTER POP brand through various agreed upon means in association with the annual event.

15. In addition to these performance obligations, the Agreement also detailed the limited circumstances under which the parties' contract could be terminated. For example, the Agreement allowed Jel Sert to terminate the Agreement, and to recover any monies paid for an annual event, if the event was not televised. In addition, both parties could terminate the Agreement immediately,

without the right to recover any paid or owed funds, if either party materially breached the Agreement. The parties defined a material breach for the purpose of termination as only one of the following: (1) if a party ceased to carry on its business or a substantial portion thereof; (2) if a party made a commitment to assign or transfer a bulk of its assets; (3) if a party became insolvent or otherwise commenced bankruptcy, dissolution, or other similar proceedings; or (4) if a party lost a permit, license, or approval from a governmental body necessary to fulfill any obligation contained in the Agreement.

16. The Agreement contains an integration clause expressly stating that the terms set forth therein constitute the entire agreement and understanding between the parties and that any contrary or different terms or understandings are superseded by the terms of the Agreement. Thus, by its very terms, the Agreement does not allow either party to terminate the contract based on a change in the event's location or a change in the date on which the event occurred.

17. The Agreement also contains an indemnity provision that is phrased to include both third party and direct claims. The indemnity provision contains an attorneys' fees clause. Pursuant to California Civil Code section 1717, the attorneys' fee clause is deemed reciprocal.

18. The parties' performance with respect to the 2017 event proceeded without issue. Jel Sert made each payment timely as required and WSOBV fully performed its obligations under the Agreement. In fact, Jel Sert's Senior Brand Manager, Kyle Harrington, expressed Jel Sert's complete satisfaction with WSOBV's handling of the 2017 event in an email immediately after its completion: "Great event this past week/weekend. Kudos to your entire team. It all came together very nicely."

19. In late 2017, due in part to health and safety concerns regarding sand quality, a significant injury sustained by an adolescent during the AAU national championships at the 2017 event, and the City of Long Beach's refusal and/or

inability to take the appropriate steps to remedy WSOBV's health and safety concerns, WSOBV made the decision to upgrade the venue from Long Beach to Huntington Beach in 2018. WSOBV subsequently secured the necessary permits and approvals to conduct their World Series of Beach Volleyball event at Huntington Beach in the month of August, just weeks later than the previous year.

20.  Nonetheless, Jel Sert failed and/or refused to make the first payment of $46,666.66 when due on December 1, 2017. At no time prior to December 1, 2017 did Jel Sert notify WSOBV of its dissatisfaction with WSOBV's performance under the Agreement let alone of its desire or intent to terminate the Agreement.

21.  On or about December 20, 2017, WSOBV received a letter from Jel Sert's President, Ken Wagner, informing WSOBV that Jel Sert was terminating the Agreement effective immediately. Rather than identifying a material breach or other basis for termination as provided by the Agreement, Mr. Wagner instead informed WSOBV that Jel Sert was terminating the Agreement immediately because of the location and date change from the previous year. As Mr. Wagner explained, Jel Sert already had another sponsorship event in Huntington Beach in July and thus, Jel Sert did not believe that the 2018 World Series of Beach Volleyball event provided sufficient value to the company. A true and correct copy of Jel Sert's termination letter is attached hereto as **Exhibit B** and incorporated herein by reference. While not a valid basis for termination, Mr. Wagner nonetheless unequivocally stated Jel Sert's repudiation of all future obligations under the Agreement.

22.  On January 15, 2018, Mr. Wagner sent an email to WSOBV where he claimed, for the first time, that Jel Sert had expressed concerns about WSOBV's performance with respect to the 2017 event and that those performance issues combined with the change in venue and date constituted a material breach of the Agreement. Mr. Wagner then attempted to leverage these purported issues to lower Jel Sert's payment obligations under the Agreement. WSOBV did not accept Jel

Sert's demand.

23. The loss of Jel Sert's financial contributions substantially impaired WSOBV's ability to cover its expenses in order to proceed with the 2018 event, especially given the timing of Jel Sert's refusal to perform. WSOBV would have been able to perform under the Agreement but for Jel Sert's breach. Despite WSOBV's best efforts, WSOBV was unable to proceed with the 2018 event as a result of Jel Sert's breach and has been forced to cease as a going concern.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

24. WSOBV incorporates paragraphs 1 through 23 as if set forth fully herein.

25. The parties entered into a written sponsorship agreement on December 20, 2016. Pursuant to the Agreement, Jel Sert committed to sponsor the 2017-2019 World Series of Beach Volleyball events. Jel Sert's commitment required it to make three equal payments for each sponsorship year with the first payment due on December 1 prior to the event.

26. Pursuant to the Agreement, Jel Sert was required to pay WSOBV $46,666.66 on or before December 1, 2017. Jel Sert failed and/or refused to make this payment when due. At the time, Jel Sert had provided no notice of any material breach nor had Jel Sert otherwise attempted to terminate the Agreement. As a result, Jel Sert's failure to make this payment on or before December 1, 2017 constituted a breach of the Agreement.

27. WSOBV had performed all of its obligations owed to Jel Sert as of the time the December 1, 2017 payment was due except for those obligations, if any, that were excused.

28. As a result of Jel Sert's breach, WSOBV has been harmed in the amount of $46,666.66.

29. WSOBV is entitled to recover compensatory damages in the amount of

$46,666.66 as well as its reasonable attorneys' fees pursuant to the Agreement, pre- and post-judgment interest, and its costs.

## SECOND CAUSE OF ACTION
### (Anticipatory Breach)

30. WSOBV incorporates paragraphs 1 through 23 as if set forth fully herein.

31. The parties entered into a valid and existing written agreement whereby Jel Sert was obligated to make a total of nine payments over the course of three years. After making the first three payments, and after missing the fourth payment, Jel Sert sent WSOBV a letter on December 20, 2017 repudiating the Agreement, including Jel Sert's continuing obligations thereunder, by affirmatively and unequivocally informing WSOBV that it was terminating the Agreement.

32. Jel Sert's repudiation of the Agreement was without justification and in violation of the termination provision set forth in the Agreement. As a result, Jel Sert's repudiation of the Agreement constituted an anticipatory breach of its remaining obligations thereunder.

33. At the time of WSOBV's repudiation of the Agreement, WSOBV was able to perform its obligations under the Agreement.

34. As a direct and proximate result of Jel Sert's repudiation of the Agreement on December 20, 2017, and its improper attempt to terminate the Agreement, WSOBV has been damaged in an amount of $243,333.34.

35. WSOBV is entitled to recover compensatory damages in the amount of $243,333.34 as well as its reasonable attorneys' fees pursuant to the Agreement, pre- and post-judgment interest, and its costs.

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

36. WSOBV incorporates paragraphs 1 through 35 as if set forth fully herein.

37.     As stated above, the parties entered into a valid and binding written sponsorship agreement on December 20, 2016.  Implied within the Agreement was Jel Sert's covenant that it would act in good faith, that it would fairly deal with WSOBV in performing its obligations under the Agreement, and that it would not do anything to interfere with the right of WSOBV to receive the benefits of the Agreement.

38.     Without good or justifiable cause, Jel Sert breached the covenant of good faith and fair dealing by failing to pay the sponsorship fees as agreed.

39.     Jel Sert knew at the time that it entered into the Agreement that WSOBV was allowing Jel Sert to be the exclusive title sponsor for the "Spiked" portion of the event, that WSOBV was foregoing other sponsor's interest in being the title sponsor for the "Spiked" portion of the event, and that WSOBV's ability to continue as a going concern was dependent on Jel Sert as the title sponsor.

40.     Jel Sert's bad faith refusal to pay the monies promised under the Agreement nearly six months into the 2018 event year precluded WSOBV from enjoying the benefits of the Agreement.  Specifically, Jel Sert's failure to pay the sponsorship fees as promised was a direct and proximate cause of WSOBV's inability to proceed as a going concern.

41.     As a direct and proximate result of Jel Sert's breach of the covenant of good faith and fair dealing, WSOBV has been harmed in an amount to be proven at trial, but which it believes exceeds $1,000,000.  These damages are separate and apart from, and in addition to, the compensatory damages caused by Jel Sert's breach and anticipatory breach of the Agreement.

## PRAYER

WHEREFORE on behalf of WSOBV for the First Cause of Action for Breach of Contract, WSOBV prays for:

1.     Compensatory damages in the amount of $46,666.66;

2.     Reasonable attorneys' fees as provided by the Agreement;

3. Pre- and post-judgment interest at the maximum rate permitted by law;
4. Costs of suit; and
5. Such other relief as the Court deems just and proper.

WHEREFORE on behalf of WSOBV for the Second Cause of Action for Anticipatory Breach, WSOBV prays for:

1. Compensatory damages in the amount of $243,333.34;
2. Reasonable attorneys' fees as provided by the Agreement;
3. Pre- and post-judgment interest at the maximum rate permitted by law;
4. Costs of suit; and
5. Such other relief as the Court deems just and proper.

WHEREFORE, on behalf of WSOBV for the Third Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing, WSOBV prays for;

1. Damages in the amount to be proven at trial, but which is estimated to exceed $1,000,000;
2. Costs of suit; and
3. Such other relief as the Court deems just and proper.

Dated: June 26, 2018         **NAVARRO | McKOWN**

By: */s/Aaron M. McKown*
Aaron M. McKown
Attorneys for Plaintiff
WORLD SERIES OF BEACH VOLLEYBALL, LLC